<u>Not for Publication</u>                                          (Docket No. 9)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

```
_____
                               :
COMCAST CABLE COMMUNICATIONS,  :
                               :
            Plaintiff,         :    Civil No. 06-1664 (RBK)
                               :
      v.                       :    OPINION
                               :
DONALD BOWERS,                 :
                               :
            Defendant.         :
_____:
```

**KUGLER**, United States District Judge:

This matter comes before the Court upon motion by Plaintiff Comcast Cable Communications ("Comcast") for entry of a default judgment against Defendant Donald Bowers ("Defendant"), pursuant to Federal Rule of Civil Procedure 55(b)(2), for failure to appear, answer, or otherwise defend in this matter. For the reasons set forth below, the Court will grant Comcast's motion.

**I.  BACKGROUND**

Comcast operates cable television systems, providing programming services to paying consumers. Comcast subscribers purchase "Basic" or "Standard" tier packages for a set monthly rate and can then add various "Premium" programming services for additional monthly charges of $7.00 to $13.00 per service. Comcast also offers "pay-per-view" programming, allowing

1

subscribers to purchase individual movies, sporting events, or other entertainment for a "per event" fee, ranging from $4.00 to $49.00, in addition to the cost of the subscriber's regular monthly subscription.

Comcast protects its proprietary signals from unauthorized reception of services by encoding, or "scrambling," its signals. Comcast provides subscribers with a decoding device that un-scrambles the purchased services, enabling customers to view the programs for which they paid. Programming services that the customer has not purchased remain scrambled and unviewable on the subscriber's television set.  According to Comcast, Defendant purchased approximately 426 "pirate" converter-decoder devices between January 2001 and January 2002, from Wholesale Electronics, Inc., to intercept Comcast's cable programming without paying for the service. Comcast filed the above-captioned suit against Defendant on April 7, 2006, seeking an injunction and monetary damages pursuant to the The Cable Communications Policy Act, 47 U.S.C. § 553.  Comcast served Defendant with the Summons and Complaint at his residence on April 21, 2006, however, Defendant failed to appear or otherwise respond to Comcast's complaint.

Upon request by Comcast, the Clerk of the Court entered default on June 14, 2006.  Comcast now moves for entry of default judgment, including an award of statutory damages in the amount

2

of $10,000, an additional sum of enhanced statutory damages of up to $50,000, full costs pursuant to 47 U.S.C. § 553(c)(3)(B), plus reasonable attorneys' fees and investigative expenses pursuant to 47 U.S.C. § 553(c)(2)(C).  Comcast also seeks to enjoin Bowers from committing any further violations of § 553.

**II.  Default Judgment Standard**

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990) ("When a defendant fails to appear . . . , the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred.")  The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit emphasized that such "discretion is not without limits, however, and we have repeatedly stated our preference that cases be disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted).

Although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Directv, Inc. v.

3

Asher, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure § 2688, at 58-59, 63 (3d ed. 1998)). Consequently, before granting a default judgment, the Court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Asher, 2006 WL 680533, at *1 (citing Wright, Miller, & Kane, § 2688, at 63); Directv, Inc. v. Croce, 332 F. Supp. 2d 715, 717 (D.N.J. 2004)).

### III.  Analysis

Section 553(a)(1) provides that "no person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Any person aggrieved by a violation of § 553(a)(1) may bring a civil action in federal district court. 47 U.S.C. § 553(c)(1).

In the event of a violation, the district court may (1) "grant temporary or final injunctions on such terms as it may deem reasonable to prevent or restrain violations of [section 553(a)(1)]"; (2) "award damages"; and/or (3) "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 553(c)(2). The

court must calculate damages using one of two methods: the prevailing party may recover its actual damages plus any profits of the violator that are attributable to the violation of § 553(a), or the prevailing party may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 and not more than $10,000, as the Court considers just. 47 U.S.C. § 553(c)(3)(A)(i-ii).

**A. Cause of Action**

Before awarding a default judgment, the Court must determine whether the moving party's complaint establishes a legitimate cause of action. Asher, 2006 WL 680533, at *1 (citing Wright, Miller, & Kane, § 2688, at 63); Directv, Inc. v. Croce, 332 F. Supp. 2d 715, 717 (D.N.J. 2004)). In this instance, Comcast alleges that, between January 2001 and January 2002, Defendant purchased a "pirate" cable television decoding device from Wholesale Electronics, Inc., that enables the interception of Comcast's private telecommunication signal. According to Comcast, Defendant illegally modified, sold, and/or distributed "pirate" descrambling equipment to sub-distributors, purchasers and other end-users of such equipment.

Accepting these allegations as true, the Court finds that Defendant violated the prohibitions of § 553 by intercepting and enabling others to intercept the "communications service[s] offered over a cable system" without authorization. See 47

5

U.S.C. § 553(a)(1).  Comcast's complaint therefore sets forth a claim upon which relief may be granted.

Before entering a default judgment, however, the Court must also consider three factors: (1) whether plaintiff will be prejudiced if default is not granted, (2) whether defendant has a meritorious defense, and (3) whether defendant's delay was the result of culpable misconduct. <u>Carpenters Health & Welfare Fund v. Naglak Design</u>, 1995 WL 20848, *2 (E.D. Pa. 1995) (citing <u>Emcasco Ins. Co. v. Sambrick</u>, 834 F.2d 71, 73 (3d Cir. 1987)).

Although these factors are typically more pertinent where the plaintiff appeared to contest the entry of default, the factors clearly weigh in Comcast's favor in this instance. Because Defendant failed to file any responsive pleadings or otherwise show cause why the Court should not enter default judgment in Comcast's favor, the Court is "not in a position to judge whether the Defendant has a meritorious defense or whether any delay was the result of culpable misconduct." <u>Id.</u>  Moreover, Defendant's failure to appear deprived Comcast of any other "means of vindicating its claim," and Comcast will be prejudiced if the default is not granted. See <u>Asher</u>, 2006 WL 680533, at *2 (granting default judgment where defendant "has not responded in any fashion," "has not asserted any meritorious defense," and has not "offered any excusable reason for his default.") Accordingly, Comcast is entitled to a default judgment for

6

Defendant's failure to appear in this action.

## B. Calculation of Damages

Consistent with § 553(c)(3)(a), this Court can award either the actual damages caused by a violation of § 553(a) or statutory damages between $250 and $10,000, as the Court considers just. However, because the manufacturer designed the "pirate" device to defeat Comcast's security measures, Comcast has no means of ascertaining the services Defendant accessed without authorization. See Comcast Cable Comm. v. Cabrera, 2005 WL 3544698, at *2 (D.N.J. Dec. 28, 2005); Cablevison Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 112 (E.D.N.Y. 1997). Comcast requests a full award of $10,000 in statutory rather than actual damages, and an additional sum of statutory enhanced damages of up to $50,000, pursuant to 47 U.S.C. § 553(c)(3)(B), within the court's discretion plus reasonable attorneys fees.

To calculate a "just" award of statutory damages under § 553(c)(3)(A)(ii), most courts consider the value of the services to which the defendant had unauthorized access. Cabrera, 2005 WL 3544698, at *2 (awarding the $10,000 maximum damages because defendant "could have illegally sustained all premium channels and pay-per-view channels offered by Comcast, totaling $5,000 per month"). Some courts concluded that "statutory damages should be 'as reasonable an estimate of actual damages as the

7

facts... allow,' not greater." <u>Charter Commc'n. Entm't I, LLC v. Burdulis</u>, 367 F. Supp. 2d 16, 26 (D. Mass. 2005) (quoting <u>Comcast of Mass. I, Inc. v. Naranjo</u>, 303 F. Supp. 2d 43 (D. Mass. 2004)). Other Courts added a punitive element to the damages calculation. <u>Directv, Inc. v. Asher</u>, 2006 WL 680533, *3 (D.N.J. 2006) (awarding $10,000 "to deter similar conduct" for violation of 47 U.S.C. § 605, a statute similar to § 553).

Courts that opt to estimate actual damages must make several assumptions, including the value of the pay-per-view programming intercepted with the pirated device. <u>See, e.g.</u>, <u>Cablevision Systems New York City Corp. v. Rosa</u>, 2002 WL 1446942, at *5 (S.D.N.Y. 2002) (estimating that defendant viewed one special event and seven pay-per-view programs per month given the "limitations that taste, viewing preference, programming selection and time placed on [defendant's] viewing"). Thus, in <u>Time Warner Cable of New York City v. Verma</u>, 2006 WL 1804565 (E.D.N.Y. 2006), for example, the court approximated damages in the amount of $156 per month: $56 attributable to the difference between the defendant's level of service and cost of a premium level of service and $100 attributable to estimated pay-per-view programming. The court then multiplied this amount by the sixty months between the purchase of the device and the filing of the complaint for a total of $9,360. In <u>Charter Commn'c Entm't I, LLC v. Burdulis</u>, 367 F. Supp. 2d 16, 29 (D. Mass. 2005), on the other

8

hand, the court estimated that the defendant had viewed "ten pay-per-view movies per month at $3.99 each and four additional pay-per-view movies per month at $6.99 each, for a total of $3,257.28 in illegally intercepted pay-per-view programming for the entire 48-month period." Id. (finding a total amount of $5,177.28 in damages).

In support of their proposed award, Comcast cites several cases awarding statutory damages against a user. Plaintiff submits that the award against a distributor should be significantly higher due to Plaintiff's distribution of the pirating devices rather than mere interception for personal use.

In Comcast v. Dorris,[1] No. 04-3587 (JBS), 2005 U.S. Dist. Lexis 23156, at *7 (D.N.J. Feb. 8, 2005), Judge Simandle noted that pirating of signals can cost the Plaintiff considerable revenue, up to hundreds of dollars of revenue per month.  Further, defendant's failure to appear demonstrates his indifference to the law.  Id.

In Comcast of Garden State LP v. Cabrera, No. 04-3431, 2005 U.S. Dist. 36421, at *5 (D.N.J. Dec. 28, 2005), Judge Cavanaugh entered a judgment for the entire amount of statutory damages, $10,000 plus pre-judgment interest and attorneys' fees and costs, to "serve as a deterrence."

---

[1] The Court notes that Plaintiff failed to use proper citations in its brief supporting its motion for default judgment.

Defendant's failure to appear makes it impossible to quantify the total amount of damages accrued from his personal use of the pirating device.  Id. at *2.  Moreover, because Defendant distributed pirating devices, the damage that the defendant cost Comcast increases exponentially.  Any estimation of actual damages is arbitrary and the Defendant should not reap a windfall arising from his failure to appear.  The calculation of damages should reflect both the Defendant's personal use and illegal distribution of the pirating devices.  Historically, courts in this circuit have been inclined to increase the damages for deterrent or punitive purposes.  See DirecTV v. Asher, 2006 WL 680533, at *3 (D.N.J. Mar. 14, 2006) (awarding $10,000 to "deter similar conduct" for violation of 47 U.S.C. § 605, a statute similar to § 553).

On the other hand, Comcast's arguments notwithstanding, it is difficult to imagine that the defendant either consumed or distributed $50,000 worth of cable television services in only one year.  See, e.g., Charter Commn'c Entm't I, LLC v. Burdulis, 367 F. Supp. 2d 16, 29 (observing the implausibility that "a defendant would order pay-per-view services 24 hours a day, every day of the month . . .")  Accordingly, the Court orders Defendant to pay Comcast damages in the amount of $10,000.

**C. Attorneys Fees and Costs**

Section 553 also permits the Court to award costs and

reasonable attorneys' fees. 47 U.S.C. § 553(c)(2)(C). To calculate reasonable attorneys' fees, the Court multiplies the number of hours reasonably expended by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). In making this lodestar calculation, the district court should eliminate any hours that were not reasonably expended, such as hours that appear "excessive, redundant, or otherwise unnecessary." See id. at 434.

Comcast requests $2,242.50 in attorney fees for litigation of the above-captioned matter. As certified by counsel for Comcast, Andrew Sklar, Esquire, Comcast allocated its efforts between four attorneys. One attorney spent 4.5 hours drafting and revising the complaint and the request for default, and prepared the papers to serve on the defendant at a rate of $145 an hour. (See Sklar Cert. ¶ 3.) A second attorney spent 1.0 hour reviewing the complaint and the request for default at a rate of $335 an hour. (See Sklar Cert. ¶ 3.) A third attorney spent 7.5 hours drafting the default judgment documents at a rate of $145 an hour. (See Sklar Cert. ¶ 3.) A fourth attorney spent 0.5 hours reviewing and revising the default judgment documents at a rate of $335 an hour. (See Sklar Cert. ¶ 3.) Comcast's counsel established the reasonableness of these hours and Defendant failed to appear or otherwise contest this request. Accordingly, Comcast is entitled to attorneys' fees in the amount of

11

$2,242.50. See Hensley, 461 U.S. at 433 (1983); Washington v. Philadelphia County Ct. of C.P., 89 F.3d 1031, 1035 (3d Cir. 1996).

In terms of litigation costs, Comcast incurred $250.00 in filing fees and $112.18 in process service fees, for a total of $362.18 in litigation costs. Because these costs are properly reimbursable, the Court will award the requested $362.18 in costs. See 47 U.S.C. § 553(c)(2)(C); Cabrera, 2005 WL 3544698, at *3.

**D. Injunction**

In addition to providing for fees and costs, § 553(c) authorizes courts to issue preliminary or final injunctions as necessary to restrain the defendant from committing any further violations of the statute. 47 U.S.C. § 553(c)(2)(A); Cabrera, 2005 WL 3544698, at *3. Generally, to obtain a permanent injunction, a plaintiff must show that (1) the Court's exercise of equity jurisdiction is proper, (2) the plaintiff succeeded on the merits, and (3) the balance of equities tips in favor of injunctive relief. TKR Cable Co. v. Cable City Corp., No. 96-CV-2877, 1998 WL 34028782, at *5 (D.N.J. Jan. 27, 1998) (citing Roe v. Operation Rescue, 919 F.2d 857, 868 n.8 (3d Cir. 1990)). The first factor contains three sub-parts that require the plaintiff to show (1) plaintiff has no adequate legal remedy; (2) the threatened injury is real, not imagined; and (3) no equitable

12

defenses exist. Id. at *5.

However, where Congress provided for injunctive relief in a statute such as § 553(c), courts often enjoin defendants without weighing the traditional equitable considerations posed by injunctive relief. See Burlington N.R.R. Co. v. Dep't of Revenue, 934 F.2d 1064, 1074-75 (9th Cir. 1991); TKR Cable Co. v. Cable City Corp., 1996 WL 465508, at *10 (D.N.J. Jul. 29, 1996), vacated in part on other grounds, 267 F.3d 196 (3d Cir. 2001); Time Warner Cable of New York City v. Freedom Elec., 897 F. Supp. 1454, 1460 (S.D. Fla. 1995); Sec. Ind. Ass'n v. Bd. of Governors of Fed. Reserve Sys., 628 F. Supp. 1438 (D.D.C. 1986).

In any event, consideration of the traditional equitable principles in this instance weighs in favor of granting Comcast the requested injunctive relief. The difficulty in detecting and measuring the extent of the Defendant's violations and potential future violations suggests that an injunction is necessary to ensure an effective remedy in this case. See id. Moreover, the threatened injury is clearly established and legitimate, since Defendant's purchase and apparent use of an illegal decoding device demonstrates an actual threat that Defendant will persist in stealing cable services without authorization. Because Bowers failed to appear or otherwise defend himself in this action, he failed to raise any equitable defenses, and there is no indication that any such defense

13

exists. Accordingly, this Court's exercise of equity jurisdiction is proper and the first factor weighs in favor of granting the final injunction.

Second, as noted above, the unchallenged facts of this case demonstrate that Defendant violated § 553 by intercepting and receiving Comcast's cable services without authorization as well as distributing the enabling pirating devices. Consequently, Comcast succeeded on the merits because Comcast stated a valid cause of action against the Defendant sufficient to warrant the entry of default judgment.

Finally, the balance of equities weighs in favor of granting injunctive relief. Defendant's alleged misconduct clearly violates § 553. It seems the only purpose behind purchasing an unauthorized decoder is to receive unscrambled cable services without paying for them. Time Warner Cable of New York City v. Barbarosa, 2001 WL 118608, at *3 (S.D.N.Y. Jan. 2, 2001), rep. & rec. adopted, 2001 WL 180366 (S.D.N.Y. Jan. 19, 2001); TKR Cable Co., 1998 WL 34028782, at *5. This conduct amounts to lost revenue for Comcast at the expense of the subscribing public. Permitting individuals like Defendant to misappropriate the goods and services of others unscathed would diminish the incentive to produce or market those products for the benefit of the public at large. Therefore, because the Defendant's illegal conduct does not serve a legitimate purpose

14

and actively harms both Comcast and the public interest, the balance of equities weighs strongly in favor of granting injunctive relief.

Because § 553 and the relevant equitable considerations authorize an award of injunctive relief in these circumstances, the Court will grant Comcast's request to enjoin Bowers from committing or assisting in the commission of any further violation of § 553.

**IV. Conclusion**

For the foregoing reasons, the Court will enter default judgment against the Defendant in the amount of $10,000 plus $2,242.50 in attorneys fees, and $362.18 in litigation costs. The court will also enjoin the Defendant from committing or assisting in the commission of any further violations of § 553.

Dated: 5/25/2007                       s/Robert B. Kugler
                                       ROBERT B. KUGLER
                                       United States District Judge